## MORRIS *vs*. THE PEOPLE.

An act of the legislature cannot be set aside as unconstitutional, unless its incompatibility with the constitution is manifest and unequivocal. *Per* LOTT, *Senator.*

An act providing for the appointment of additional judges for the courts of justice in the city of New-York is not necessarily an alteration of the charter of the city. *Semble. Per* LOTT, *Senator.*

But if the provision in the act of May 14, 1840, which directed the appointment of associate judges of the court of general sessions of the city and county of New-York, was void for not having been passed by a constitutional vote, still the individuals appointed pursuant to the act, who entered upon their duties, were judges *de facto*—whose authority could not be questioned collaterally. *Per* LOTT, *Senator.*

And the officers whose agency was by law required in providing for the payment of their salaries could not inquire into the legality of their appointment. *Per* LOTT, *Senator.*

Where the legislature, after the persons so appointed judges had served in their offices one year, passed an act, by a majority vote, declaring the *arrears* of their salaries a county charge, and directing the board of supervisors to audit and allow their accounts therefor, *held* a constitutional enactment and binding on the board of supervisors.

Such a statute is not, even admitting the act for the appointment of the judges not to have been constitutionally passed, " a bill appropriating the public moneys or

property for local or private purposes," and did not therefore require the assent or two-thirds of the members elected.

Where the board of supervisors of a county are required by law to "*audit* and allow" the accounts of a class of public officers for their salaries, they have no discretion to exercise, but must allow the salary as fixed by law.

And where the account of such an officer was presented to the board, and was not audited—the resolution for its allowance being lost—*held* that a member voting against it was liable to the penalty of $250, prescribed by 1 *R. S.* 368, § 16.

In an action for the penalty in such a case, the facts being undisputed, the liability of the defendant is a conclusion of law; and the judge need not submit the question to the jury.

*Held also,* that the motive of the defendant is not material, and that he is liable, although he acted mistakenly and not corruptly.

In declaring against a supervisor for the penalty imposed by the revised statutes for refusing or neglecting to perform a duty required of him by law, it is not necessary to refer to the statute prescribing the duty, but only to that which inflicts the penalty.

On error from the supreme court. The district attorney of the city and county of New-York brought an action of debt in the court below, in the name of the people, against Robert H. Morris, the plaintiff in error, for a penalty of $250, imposed by the statute, (1 *R. S.* 368, § 16,) for refusing to perform his duty as a member of the board of supervisors of the city of New-York, "in this to wit: in refusing to audit and allow the account of James Lynch, one of the associate judges of the court of general sessions of the city and county of New-York, for arrears of salary then and there due by law to the said James Lynch, as such associate judge; whereby an action hath accrued to the said plaintiff to have and demand of the said defendant the said sum above demanded according to the provisions of the statute entitled 'of the powers, duties and privileges of counties and of certain county officers,' part first, chapter twelve, title second, article first, section sixteenth of the revised statutes." The suit was commenced on the 8th day of September, 1841, at the instance of Judge Lynch. The defendant pleaded not guilty, and the issue was tried before Kent, late C. Judge, at the New-York circuit in February, 1842. The commission of James Lynch as one of the associate justices of the court of general sessions of the peace in and for the city and county of New-York was pro

duced, and it was shewn that he took the oath of office on the 20th day of May, 1840. It was then proved on the part of the plaintiff that at a meeting of the board of supervisors of the city and county of New-York, held on the 17th day of June, 1841, the account of Judge Lynch for his salary for one year, to May 20th, 1841, was presented, and a resolution was offered that it be audited with interest, which was lost, the defendant, who as the mayor of the city was a member of the board, voting in the negative. Another meeting of the board was held on the 21st day of June, 1841, at which the defendant offered a preamble to the effect that the act establishing the offices of associate judges of the general sessions was passed without the application of the city authorities, and was against the wishes of the inhabitants, but that inasmuch as the supreme court had held the law obligatory, it was the duty of the board to obey it; and also two resolutions, the first declaring that the board did not approve of or sanction the law and hoped for its repeal, and the other directing the comptroller of the city to pay the salaries of the associate judges. The question was taken, separately, upon the preamble and upon each of the resolutions, and they were lost, the vote upon each being *affirmative* seven, *negative* seven; the defendant voting in favor of the preamble and of the first resolution, and against the second resolution. A resolution to audit the salary ͨ Judge Lynch was also lost, as was likewise a resolution declaring that the board would *not* direct the comptroller to pay the salary, the defendant in each instance voting in the negative. Another meeting was held on the 9th day of July, 1841, when proceedings of the same general character not resulting in any action in favor of the payment of the account were had, the defendant proposing a preamble and resolutions similar to those above mentioned, but voting against the auditing of the account after the preamble was lost, and at the same time voting against a declaration that the salary should *not* be paid. No further proceedings of the board touching the account seem to have been had prior to the commencement of the suit.

The defendant then proved that neither the act " for the better organization of the criminal courts of the city of New-York,"

passed May 14th, 1840, (*Stat. p.* 257,) or the act " to enable the supervisors of the 'city and county of New-York to raise money by tax," passed May 26th, 1841, (*Stat. p.* 265,) received the assent of two-thirds of all the members elected to each branch of the legislature; and he offered to show that the question of the liability of the city for these salaries was pending before the courts in various forms when he was called upon to vote; but the testimony was excluded upon the plaintiff's objection, and the defendant excepted. The defendant insisted that neither of these acts were constitutionally passed; but if they were, that it was a question for the jury whether the defendant had acted corruptly, and he requested the judge to charge the jury that the defendant was not liable unless his intention was corrupt. The judge however charged the jury, that these acts were legally passed and were obligatory, and that the defendant had incurred the penalty mentioned in the statute. The defendant's counsel excepted and the jury found a verdict for the plaintiff. The defendant moved the supreme court in *arrest of judgment*, and also for a new trial on a bill of exceptions. Both motions were denied, and judgment was given against the defendant. The reasons of that court were given as follows, by

COWEN, J. The declaration is good within the 2 *R. S.* 482 § 10, unless it be defective in omitting a reference to the statute of 1841, ch. 276, p. 267, § 4, specially directing the supervisors of the city and county of New-York to audit and allow the account of Judge Lynch and his associates. The section cited from 2 *R. S.* substitutes a very general form of declaring on penal statutes for the special matter required to be set forth in the common law declaration. It declares that it shall be sufficient in a declaration on any penal statute, to allege, as is done here, that the defendant is indebted in the prescribed penalty; " whereby an action accrued *according to the provisions*" of the statute, &c. The penal statute referred to in this instance gives the penalty of $250 against each supervisor who shall refuse or neglect to perform *any of the duties* which are or *shall be* required of him by law as a member of his board. (1 *R. S.* 368,

§ 16.) The statute of 1841 imposed the duty of auditing the account mentioned in the declaration. The general reference alone is, I think, sufficient. Though the act of 1841 was passed years after the statute which gave the penalty, yet the refusal to audit, &c. was properly treated by the declaration as in effect a violation of the latter. This has, by its prospective words, effectually incorporated with itself the act of 1841, and both must be read as one statute. On this construction, any refusal to do the duty of a supervisor while acting as a member of the board, whether imposed by a statute passed before or after, rendered the defendant liable in the words of the statute, *according to the provisions of the statute,* entitled &c. But the pleader has not contented himself with the general reference. He has mentioned the particular violation of duty which, on comparing the specification with the act of 1841, we see is within its terms. That removes all doubts, if there be any, on the general form. The motion in arrest must be denied.

The salary of Judge Lynch had been fixed by statute, and made payable out of the treasury of the city of New-York. It had not been paid May 26th, 1841; and an act was then passed making it a county charge, adding—" And the mayor, recorder, and aldermen of the city of New-York, as the supervisors of the said city and county of New-York, of whom the mayor or recorder shall be one, shall audit and allow the account for such arrears on or before the tenth day of July next." Judge Lynch's account was duly presented, and the defendant, who was mayor, voted against its audit.

The provision of the revised statutes is, that " if any supervisor shall refuse or neglect to perform any of the duties which are or shall be required of him by law, as a member of the board of supervisors, he shall for every such offence forfeit the sum of $250." Under the proof the defendant was *prima facie* liable.

We have held that the law constituting the court of general sessions for the city was valid, as being passed by a constitutional majority: that a two-third vote was not necessary. That the question was pending when the vote of the defendant was

given against the audit, and that he entertained an opinion the other way, was properly rejected as a ground of defence. It is but another mode of saying that a man shall be excused for the commission of an offence in fact, because he does not believe his acts to be such in law. It is enough, in our opinion, that they are in truth contrary to law, until we are overruled by the court of errors.

The case was argued here by *P. A. Cowdrey & J. T. Brady*, for the plaintiff in error, who insisted upon the following points:

1. The act creating the office of *associate judge* of the court of sessions of the city of New-York, (*Stat.* 1840, *p.* 257,) not having received the assent of two-thirds of the members elected to each branch of the legislature, is void. (*Purdy* v. *The People*, 4 *Hill*, 384.)

2. The new organization of the court of sessions attempted by that act, excluded the aldermen, as judges, and substituted two associate justices in their stead. If the aldermen could not be thus deprived of their offices, the whole scheme of which that was a part must be void.

3. The act under consideration is repugnant to the fifteenth section of article four, of the constitution, which declares, that "All officers heretofore elective by the people shall continue to be elected." The aldermen were judges of the court of sessions, and were elective by the people. The act provided that the associate judges, who are to supply their places, shall be appointed by the governor and senate.

4. The duty of the supervisors depends upon the legal title of the associate judges. If they were not judges *de jure*, an appropriation to pay their salaries would have been a misapplication of the public moneys.

5. The penalty sought to be recovered in this case, was intended to be inflicted only for a violation of public duties. But the present suit was instituted to enforce a mere private claim, for the recovery of which, it well founded, there are other ap-

Morris *v.* The People.

propriate remedies. (*Matter of Shipley*, 10 *John.* 484; *The People, &c.* v. *The Mayor, &c.* 25 *Wend.* 680.)

6. The question whether the defendant was liable should have been submitted to the jury.

7. The declaration was defective in not containing a reference to the act of 1841, which prescribed the duty which is said to have been violated.

*J. R. Whiting*, for the defendants in error, insisted that although that portion of the act of 1840, which deprived the aldermen of their seats in the court of sessions, might be void, yet its invalidity in that respect did not render the residue of the act void; and that, if it were held that the act was void in all its parts, still the imperative direction in the act of 1841, to audit and allow the accounts of the judges for services actually rendered in good faith, created a duty on the part of the supervisors, for the violation of which this action could be sustained. He referred to the following authorities: (*Purdy* v. *The People*, 4 *Hill*, 387, *per Walworth, Chancellor*; *Golden* v. *Prince*, 4 *Wash. C. C. R.* 318; *Ely* v. *Thompson*, 3 *Marsh. R.* 73; *Caswell* v. *Allen*, 7 *John.* 63.)

HAND, Senator. By the act "for the better organization of criminal courts in the city and county of New-York," it is enacted that "the court of general sessions in the city and county of New-York shall hereafter be held and all the powers thereof exercised" by a recorder and two judges; and a salary of $2000 each is given to those judges. (*Stat.* 1840, *p.* 257, §§ 1, 5.) Mr. Lynch was appointed one of the judges. By an act passed in 1841, it is declared that "the arrears of salary" of those associate judges "now due and their salaries hereafter to become due," shall be county charges, and that the supervisors "shall audit and allow the account for such arrears on or before the 10th day of July next, and hereafter quarterly as such salaries may become due." (*Stat. of* 1841, *p.* 267, § 4.) A provision of the revised statutes declares that "if any supervisor shall refuse or neglect to perform any of the duties which are or shall be

required of him by law as a member of the board of supervisors, he shall for every such offence forfeit the sum of two hundred and fifty dollars." (1 *R. S.* 368, § 16.)

Perhaps the constitutional question referred to in the charge of the judge, does fairly arise in this case; for if the act appointing Mr. Lynch an assosiate judge was unconstitutional, his acts as such, certainly as to himself, were void, however they might affect third persons. Consequently he was personally liable to any one injured thereby, and could not justify under his appointment, much less could he claim compensation for performing those acts. But it is not clear that the legislatnre had not the power to direct, by another law passed after the services were rendered, that he should be paid therefor by the county. It could not require a corporation to pay this, for that would be the same as taking the property of an individual for that purpose : and not being for public benefit, that could not be done even with compensation. But the power of the legislature to make an appropriation to be paid by a certain portion of the state, might possibly be quite a different question. That the whole scope and aim of the law of 1840 was an infringement upon the corporate rights of New-York, I have very little doubt. That the language, spirit and intent of the act were to reorganize the court of general sessions in that city, to me is obvious, and I cannot eviscerate it, and abrogate some of the most important of its provisions, for the purpose of making it innoxious and enabling it to evade the constitution. A higher power than the legislature has forbidden it. The jury was distinctly instructed that the law of 1840 was constitutional ; and even if we suppose a conviction could have been had for the violation of the law of 1841, yet not knowing what course the cause would otherwise have taken, we are not to consider the effect of that charge as harmless.

But I do not put my vote in tnis cause upon that ground alone. There is in my opinion another, and perhaps in its effects upon community a more serious error in this decision. The liability of public officers is a matter of grave importance. On the one hand, they should be held to a faithful, vigilant and

honest discharge of their duties; while on the other, slavish fear should not be inculcated by holding them liable to penalties for every mistake, however conscientious. I have been at some loss to give plausibility to the cause of action as set out in the declaration. The statute fixes the penalty upon a neglect of duty as a "member of the board;" this declaration claims the penalty because the defendant refused to audit and allow the salary. No doubt a neglect of duty may be by one, but the *auditing* and *allowing* is the act of the *board,* which was a *quasi* corporation. The defendant could not allow and audit. That was not "required by law" of him. He is charged with refusing to do that which he could not do. If liable at all, the jury might have found him guilty of refusing or neglecting to perform his duty by *voting* against allowing and auditing, or against taking up the question, if this had been charged against him; for that would be his act. But that is not the charge; and how can he be sued for not doing that which he alone could not perform nor prevent? However I do not put this case on a question of pleading ; but throw out these suggestions as I think they go to show the fallacy of the plaintiffs' positions, that an action will lie against an individual member of such a body, because the result of the action of that body does not accomplish as much as the law requires.

I cannot believe for a moment that the statute giving this penalty was ever intended to reach a case of an imperfect or mistaken performance of duty as a member of the board—a mere misfeasance—when there was no malice or corruption. The evidence shews that the defendant was willing to join in a vote to audit and allow the account, if it could be accompanied by an expression of disapprobation of the law, which he judged to be important to protect the rights and interests of the corporation. He was not wholly opposed to the payment of the salary, but insisted only that it should be granted in such a manner as seemed to him discreet and proper. The method which he approved not being assented to by a majority of the board, he declined to give an affirmative vote in favor of the allowance. To neglect or refuse to act is one thing, but to act according to his

'sense of duty, and to the best of his judgment as a member of the board, is a performance of his duty, however mistaken he may be. One is a nonfeasance, the other is a misfeasance. For the latter a member of the board of supervisors cannot be liable under this section, without alleging and proving bad intent— and then it is malfeasance. To hold them to other lines of duty, would be to make their liability for the penalty analogous to that of common carriers, and impose it upon them for every mistake.

But there is another objection fatal to this judgment. It must be remembered that *intent* is laid out of the case by the charge of the judge. We have then an action for a penalty against a supervisor for refusing and neglecting to perform his duty as a member of the board, because he refused to "audit and allow" a salary I am now supposing these disputed laws valid, and the defendant proved to be a supervisor. This action by the people should not be sustained, except upon the same principle that an action for the neglect or refusal to perform a duty would lie against an officer by a person who had suffered damage by his delinquency It never could have been intended that a supervisor, who had done what he conceived to be his duty, should be liable at all events, and that too for penalties in the name of the people. No matter what his duty or station, if he act with malicious or corrupt intent, he is indictable. But to give the people an action where there has been an honest attempt to fulfil the duty, and where if an individual had suffered thereby he would not be allowed to recover, would be refining upon the law of penalties, and a cruel novelty in our criminal jurisprudence. The penalty is given for an "offence," and its object is to punish, and therefore the case, I have no doubt, should be passed upon by a jury. It never should be enforced for an imperfect performance, done in good faith—certainly not, unless the act is purely a ministerial one. The duty in this case was not ministerial in its character. The statute does not direct the supervisors to order payment of a given sum, but they are to "audit and allow" the arrears of salary. The very words of the statute import the exercise of judgment and discretion. The board was not a mere

agent to enter an order for the payment of a fixed sum. In such a case it would be ministerial. So the payment of a sum where another has ascertained the amount. So perhaps where the board is merely "to raise" a sum which they cannot audit. But here they were to "audit," which means to hear, examine, adjust, pass upon and settle the account, and then allow it. It matters not whether the duty was difficult or easy : in its nature it required the *exercise of judgment,* and that is enough. In this very case a question about interest arose, the solution of which required legal knowledge in order to a right and safe decision. There were divisions on that very point, and probably debate. The defendant, as mayor of the city, and having the interests of its great population and immense business in his keeping as its chief magistrate, and doubting also the validity of the acts of the legislature, deemed it important that the act of auditing and allowing the account should be accompanied with a declaration of the rights of the corporation, that no presumption against its corporate rights should obtain from a non-user of those rights, or from acquiescence in doubtful laws. I do not discover that the defendant showed any opposition to the account, provided the proper guards were thrown around the interests of his constituents; and yet, because he was not willing to yield a point so vital and against his own convictions of duty, he is to be sued for an "offence," and punished with severe penalties. The law on the subject of official liability I had supposed well settled as laid down by the court in *Kendall* v. *Stokes,* (3 *Howard,* 9,) as follows : "A public officer is not liable to an action if he falls into an error in a case where the act to be done is not merely a ministerial one, but is one relative to which it is his duty to exercise judgment and discretion, even although an individual may suffer by his mistake. A contrary principle would indeed be pregnant with the greatest mischiefs." This is the strong language of the court in that case, which was very analogous to the one before us. In that case the officer had only to enter and give credit on the official books for an amount already settled, and which did not require any judgment of his to adjust. And I find nothing in the great case in the house of

lords, *Ferguson* v. *The Earl of Kinnoul*, (9 *Clark & Finnelly*, 279,) that in the least militates against this doctrine.  On the contrary, Lord Brougham says : " Even inferior courts, provided the law has clothed them with judicial functions, are not amenable for errors of judgment; and when they may not act as judges, but only have a discretion confided to them, an erroneous exercise of that discretion, however plain the miscarriage may be, and however injurious its consequences, they shall not answer for."  The cases of *Gidley* v. *Lord Palmerston*, (3 *B & B*. 275,) and *Kendall* v. *Stokes*, (3 *Howard*, 87,) show that this was not a ministerial act.  It partakes more of legislative, for which, as Lord Brougham says in *Ferguson* v. *Kinnoul*, there is never any liability.  Here the statute required an *auditing* and allowing of the account, but the process of obtaining that result, requires the exercise of judgment.  Many authorities contain the same doctrine as the cases above cited.

Again, public policy, in my opinion, is decisive against this action.  To sustain the positions necessarily contended for by the plaintiffs in this cause, would take from these very important public officers that independence and freedom of action, absolutely necessary to a proper discharge of their official duties.

With the greatest respect for the eminent men whose decision we are reviewing, I must vote for a reversal.

LOTT, Senator.  This suit is brought for the recovery of a penalty alleged to have been incurred by the plaintiff in error, for a violation of duty as one of the supervisors of the city and county of New-York.

By the general law prescribing the duties of county officers, it is provided, among other things, that " The board of supervisors of each county in this state shall have power at their annual meetings, or at any other meeting,—1. To make such orders concerning the corporate property of the county as they may deem expedient.  2. To examine, settle and allow all accounts chargeable against such county, and to direct the raising of such sums as may be necessary to defray the same.  3. To audit the accounts of town officers and other persons against

their respective towns, and to direct the raising of such sums as may be necessary to defray the same; and 4. To perform all other duties which may be enjoined on them by any law of this state. (1 *R. S.* 367, § 4.) The sixteenth section of the same article provides the penalty for refusal or neglect of duty, in terms which it is unnecessary to repeat. The mayor, recorder and aldermen of the city of New-York, are the supervisors of the city and county of New-York, and these general provisions extend to them respectively. (1 *R. S.* 368, § 17.) The provisions of the act of 1840, creating the office of associate judge of the court of sessions in New-York, and the enactment of 1841, making the salaries of these officers a county charge, and directing the auditing and allowing thereof by the board of supervisors, have become too familiar to require them to be again stated. It is for the refusal to audit and allow the account of James Lynch, one of the associate judges appointed under the act of 1840, for the arrears of salary referred to in that section as *due,* that the penalty sued for is alleged to have accrued.

The principal ground taken against the plaintiff's right to recover is, that the act of 1840, providing for the appointment of the associate judges, is unconstitutional ; and the case of *Purdy* v. *The People,* (4 *Hill,* 384,) is relied on as a decisive authority in support of that position. In my judgment, it does not warrant or sanction it. The question there arose upon an information in the nature of a writ of *quo warranto,* filed against Alderman Purdy for exercising the office of judge of the court of general sessions in and for the city and county of New-York, and the only point decided was, that the aldermen of that city, notwithstanding the act, were entitled to act as judges of that court. Two general grounds were insisted on in favor of that right by the counsel for the defendant. The first assumed, that the act referred to did not in fact abrogate those parts of the city charter of the city of New-York, and of the acts of previous legislatures, which empowered aldermen to sit as judges of the court of general sessions; and that its whole effect, considered in connection with the charter, as it previously stood, was to enable the recorder and the two judges to be appointed under it to

hold the court without the presence of the aldermen, but that the latter still had the right to sit as members, if they chose to exercise it; and it appears by the opinion of the chancellor, (p. 392,) that one of the counsel (Mr. Butler,) confined his argument to that point.    The other ground was that the act, if it did exclude them, altered the charter of the corporation of the city of New-York, and not having been passed by a vote of two-thirds, was void on that account.    No resolution was adopted declaring upon which ground the decision of the majority of the court was placed.

The presumption is always in favor of the validity of a law, if the contrary is not clearly demonstrated.    Chief Justice Marshall, in *Fletcher* v. *Peck,* (6 *Cranch,* 87,) says—" It is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered void.    The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."  And Chief Justice Savage, in *Ex parte Colburn,* (1 *Cowen,* 564,) says : "Before the court will deem it their duty to declare an act of the legislature unconstitutional, a case must be presented in which there can be no rational doubt."  If, therefore, the decision in *Purdy* v. *The People* can be sustained on the first ground, it will be presumed to have been based on that and not on the unconstitutionality of the law.    But if it be conceded that the legislature could not divest the aldermen of the right to sit, by a vote of a majority merely, yet it does not necessarily follow that additional judges cannot be added by such a vote; and I shall be slow to yield my assent to the doctrine that every law affecting the organization or powers of the courts of common pleas, oyer and terminer, and general sessions of the peace, or relating to the administration of justice in the city and county of New-York, is an alteration of the chartered rights of that city. Chancellor Kent, in his notes on this charter, when commenting on the sections relating to those courts, says that they have been entirely superseded by a succession of statute regulations, and that upon those statute foundations, and not on those sec·

Morris v. The People.

tions of the charter, rest all the powers originally conferred by them.  (*See Notes* 40 *and* 41, *p.* 161 *and* 164.)

In the view, however, which I have taken of this case, it is unnecessary to express any opinion as to the constitutionality of the law of 1840.  The duty to audit and allow the accounts of the associate judges was not imposed on the board of supervisors by that act, but by the act of 1841, making their salary a county charge.  Judge Lynch then held a commission as one of the new associate judges, dated on the 14th day of May, 1840, " in due form as required by law ;" and it appears that he had performed the duties of his office since his appointment.  He was, therefore, at least an officer *de facto,* if not *de jure,* acting not by a mere usurpation of power without color of right, but under a license or authority emanating from the government itself.  His title was not inquirable into by the board of supervisors.  Their powers in relation to his account rendered for arrears of salary *due when the act was passed,* were limited and specific.  They were to " audit and allow" it by a certain day, under a salary ascertained and fixed by law.  They could not question his right to compensation, nor exercise any discretion as to the amount.  Both were established and declared by the legislature.  Their duty was, therefore, of a ministerial character only, and they could not assume the province of the judiciary and decide on the validity of the appointment of the judge, whose account they were enjoined to audit and allow. This principle was fully and, I think, properly settled in *The People* v. *Collins,* (7 *John.* 549,) and in *The People* v. *Dean,* (3 *Wend.* 438.)  In the first case, certain individuals had been elected commissioners of highways, but the certificate of their oaths of office had not been filed in the office of the town clerk, a neglect to do which was, by the law, declared to be a refusal to serve.  Upon this state of facts, the town clerk refused to record a survey of a road made by them, assigning their neglect, among other grounds, for his refusal.  In reference to this, the court, on granting a mandamus to compel him to record the road, say—" The persons by whom the road was laid out were commissioners *de facto,* since they came to their office by color

of title." "It certainly did not lie with the defendant, as a mere ministerial officer, to adjudge the acts of the commissioners null. It was his duty to record the paper; *valeat quantum, valere potest.* It was enough for him that those persons had been duly elected commissioners within the year, and were in the actual exercise of their office. The validity of their title must not be determined in this collateral way." In the other case, the relator Dobbs had been appointed a commissioner of deeds for the city of New-York, but the clerk of the court of common pleas refused to administer the oath of office to him, on the ground that he was a minor, and therefore incompetent to hold the office. An application was made for a mandamus directing the clerk to administer the oath, which was granted. The court, in making their decision remark, that "A minor and an alien are incapable of holding a civil office within this state, (1 *R. S.* 116, § 1,) but it is not the province of the officer, to whom the application is made to administer the oath of office, to determine whether the person presenting himself is or is not capable of holding the office. It is the duty of such officer, on the production of the commission, to administer the oath. If an appointment had been improperly made, there is a legal mode in which it may be declared void."

It is also a well settled rule, that the acts of an officer *de facto* are as valid and effectual when they concern the public and the rights of third persons as if he was an officer *de jure;* and his right to perform those acts is not inquirable into in a collateral proceeding. The present action is brought by the people against the defendant for a violation of duty imposed by law, and it is not competent for him to impeach the title of Judge Lynch, who is not a party to the suit, although it was originally commenced on his information and request. If that were allowed, the rights of a person in office might be prejudiced without an opportunity of protection. The proper remedy, in the first instance, is by an information in the nature of a *quo warranto* by which the right to the office may be tried. (*See The People* v. *The Mayor, &c. of New-York,* 3 *John. Cas.* 79. In *McInstry* v. *Tanner,* (9 *John.* 135,) an objection was taken

that the proceedings which had taken place before a justice of the peace were *coram non judice,* because he was a priest or minister of the gospel. The allegation was denied in the return to a certiorari; but the court say, " If it were not so, it might well be questioned whether the court could take notice of such an objection in this way, since we are to intend that the justice acted under a *regular commission,* and he has not been put to answer for an unconstitutional act of power." The principle was again discussed in *Wilcox* v. *Smith,* (5 *Wend.* 231,) where the court lay it down as an established rule, that " an individual coming into office by color of an election or appointment is an officer *de facto,* and his acts in relation to the public or third persons are valid until he is removed, although it be conceded that his election or appointment was illegal." They add, " His title shall not be inquired into." This doctrine has also been sustained by the chancellor in *Parker* v. *Baker,* (8 *Paige,* 428.) The case came before him on an appeal from a decision of the vice chancellor of the eighth circuit. An application had been made to him to dismiss the complainant's bill for want of prosecution, founded on an affidavit sworn to before one of the commissioners of deeds appointed by the governor with the consent of the senate, for the city of Buffalo. The vice chancellor decided that there was no law authorizing the appointment of commissioners of deeds for that city by the governor, and that therefore there was no such officer authorized to take affidavits to be read in that court, and upon that ground alone denied the motion. The chancellor upon a review of the authorities remarked, " This court is not authorized, in this collateral proceeding, to which the commissioner is not a party, to inquire into the legality of the appointment." He therefore expressed no opinion as to the power of the governor and senate in the premises. That question, however, subsequently came before the supreme court on an information in the nature of a *quo warranto* in the case of *The People* v. *Salisbury,* (24 *Wend.* 409,) and was decided against the power claimed. (*See also Fowler* v. *Beebee,* 9 *Mass.* 231.) The supreme court in *The People* v. *White,* (24 *Wend.* 520, 525,) in speaking of the principle now under consideration,

observe that "it would be impossible to maintain the supremacy of the laws, if individuals were at liberty in a collateral manner, to question the authority of those who in fact hold public offices under color of legal title;" and the same doctrine was fully recognized by several members of this court when that case came here for review, although the judgment was reversed on other grounds. (*Id.* 539, 550, 564.) In *The People* v. *Stevens*, (5 *Hill*, 616,) an application was made for a mandamus for the purpose of testing the right of the relator to the office of clerk of the city of Brooklyn, in the possession of the defendant, to determine which it became necessary to attack the title of Osborne, one of the aldermen, to his office. The motion was denied, and Mr. Justice Bronson in his opinion has the following remark: "Now admitting that the title of Osborne could be successfully assailed in a direct legal proceeding against him, it cannot be overturned in a collateral way."

It appears to me clear, therefore, not only that the board of supervisors had no right, but that this court cannot in this suit, to which Judge Lynch is not a party, decide upon his title to the office of associate judge by virtue of his appointment under the act of 1840.

There is another view of the case, which in my judgment is conclusive against the defendant, even upon the assumpion that the law of 1840 was unconstitutional, and that the commission of Judge Lynch was invalid. He had at the time of the passage of the act of 1841, been for more than a year in the discharge of duties for the public under the color of an appointment, and with the consent and continued acquiescence of that public, devoting his time and services to the protection of the community in the enjoyment of their rights of property and personal liberty, for which he had received no remuneration. In consideration of these facts, the legislature declared that his compensation, which had been fixed at the annual salary of two thousand dollars, should be a county charge; and directed the board of supervisors to audit and allow his account for arrearages due by a specific day. It is important to bear in mind that this duty was imposed by the act of 1841. The act of 1840 is referred

to, only to ascertain the measure and terms of compensation, and so far may be considered as incorporated with the act of 1841; and the terms "due" and "to become due," are used in the last act in reference to the times fixed for the quarterly payments of the salary. The account presented was for services actually rendered. There was a full consideration for the liability imposed on the county, and I think there can be no doubt of the power of the legislature to provide for and direct its payment. (*See The People* v. *The Mayor, &c. 25 Wend.* 680, *and note to Ex parte Lynch,* 2 *Hill,* 46.) It is doubtless within their authority to provide means for the proper administration of the government, and to apportion the burdens as they may deem equitable. The expense incident to the holding of county courts is usually charged upon the respective counties within which they are incurred, and the charge was so imposed in the case of the associate judges appointed under the act of 1840. It frequently occurs that services are rendered and expenses incurred by public officers for the payment of which no means are provided, and laws are from time to time passed making provision for compensation and reimbursement. The propriety of such a course is recognized in *The People* v. *Lawrence,* (6 *Hill,* 244.) There a bill had been audited by the board of supervisors of New-York for expenses incurred by a magistrate in his defence on an impeachment, but which they were not authorized by any law to allow; and the chamberlain on that account refused payment, which the court held it was his duty to do. The chief justice there says, "Whatever appearance of justice there may be in charging the expense of the accused upon the county, it is enough for us to say that this consideration addresses itself exclusively to the legislature."

There is no force in the objection that the act of 1841, was a "bill appropriating the public moneys or property for local or private purposes," and therefore void for the want of the assent of two-thirds of the members elected to each branch of the legislature. It was a law making provision for the payment of an honest claim due for services rendered to the public and which good faith required them to pay. It was in no sense, a gratuity

to an individual. It was a provision for the discharge of a public obligation. Under such circumstances Judge Lynch was entitled to the payment of his account for the arrears of salary due to him, and it was the duty of the board of supervisors to audit and allow it.

The point is now to be considered whether the circuit judge erred in instructing the jury that under the evidence it necessarily followed that the defendant had incurred the penaly sued for. After a careful examination of the points discussed on the argument, I cannot see what other conclusion could have been arrived at. Though it does not appear to have been distinctly proved that the defendant was the mayor of the city, yet that fact was obviously assumed by both parties, and the trial proceeded on that assumption. The testimony consisted, almost exclusively, of admissions and documentary evidence, and there is no pretence that any portion of it was contradictory. It then presented a case of undisputed facts, and if the view of the law as applicable to them, taken by the circuit judge, was correct, there was no escape from the conclusion that the defendant had incurred the penalty. If the charge of the judge had been that the vote of the defendant against the audit and allowance of the account made him liable for the penalty, it would have been in legal effect the same as that in fact given, and it certainly would have been surprising to have found it gravely submitted to the jury to decide, upon the official proceedings of the board of supervisors indisputably showing it, whether such vote had been given. As therefore there was no disputed question of fact for the determination of the jury, no objection exists against the positive instructions of the circuit judge, as to the liability of the defendant, if the negative votes given by him on the question of the audit and allowance did in law render him liable. That question will now be briefly examined, and in its consideration I will notice, as connected with it, the exceptions taken to the refusal of the judge to charge the jury as requested by the counsel of the plaintiff in error. The right of Judge Lynch to the payment of the arrears of salary due him at the time of the passage of the act of 1841, and the validity of the

law imposing the duty on the board of supervisors to audit and
allow it, I have already considered, and I think established.
That act was mandatory in its character. It did not only pro-
vide that the compensation of the associate judges should be a
county charge, vesting the board of supervisors with a discre-
tion under their general power " to examine, settle and allow
all accounts chargeable against the county," but it declared that
it should be made in a fixed and definite salary, payable at
specific periods, and directed the board " to audit and allow " the
account of arrears of salary then *due*, on or before the tenth day
of July then next, and thereafter quarterly, as the same should
become due. It was a specific duty ; and, as I have before
remarked, the supervisors could not question Judge Lynch's
right to compensation or vary the amount specified. This
principle was established by the supreme court in *The People*
v. *The Supervisors of Dutchess*, (9 *Wend.* 508.) In that case
it appeared that by the act of 1832, for the preservation of the
public health, (*Laws of* 1832, *p.* 581,) the board of health were
authorized to prescribe the duties and powers of the health offi-
cer, to direct him from time to time in the performance thereof,
and to fix the compensation he should receive; and all the
expenses incurred by the board were declared to be a county
charge. It was held that, with the exception of the compensa-
tion to be paid to the health officer, the supervisors had a dis-
cretionary power in the settlement and allowance of those
claims, involving the right to reject; but that they had no
authority to alter the compensation fixed by the board of health
for the health officer, but were, on the contrary, bound to audit
it. This principle was also fully recognized and adopted by
the court for the correction of errors in *The People* v. *The Su-
pervisors of the County of Kings*, (16 *Wendell*, 520.) The
question there arose on the power of the board of supervisors
of Kings county, to reduce the damages assessed by a jury to
the owner of land taken for the opening of a road in the then
town of Brooklyn. It was provided by a special act that the
commissioners of highways of the counties to which the act
applied should cause a statement of the verdict, charges and

Morris *v.* The People.

expenses in laying out a certain road " to be delivered to the supervisor of the town, who shall lay the same before the board of supervisors, by whom the same shall be *audited.*" The next section directed that the amount of damages, as settled by the jury, or as liquidated by the commissioners of highways, to-gether with the charges, &c. " *as audited and allowed by the board of supervisors,*" should be levied and collected in the town in which the highway was situated. The supreme court, in *The People* v. *The Supervisors of Kings County,* (7 *Wendell,* 530,) had held, that under the powers thus conferred the supervisors had a discretion in relation to the damages, as well as the charges, and had a right to examine the assessment, and if they thought it extravagant to reduce it, and direct the balance only to be levied and collected. Relying on this decision, the supervisors greatly reduced the amount of damages awarded to one Hoyt, and their act was sustained by the supreme court. On a writ of error it was held by this court that the verdict of the jury was final and conclusive, as well in respect to the town as the individual whose land was taken, and that consequently the supervisors were bound to allow the whole amount of damages as settled by the jury, and had no power to reduce the same. All the members of the court with one exception (twenty-five being present) concurred in this decision, and voted for a reversal of the judgment of the supreme court. It is clear, therefore, that the supervisors had no discretionary power to exercise, either as to the justice or the amount of the claim of Judge Lynch.

It was insisted, however, that the penalty is not incurred unless the intention of the board in not auditing and allowing the account was corrupt. This view is wholly untenable. The offence consists in the refusal to perform the duty required by law, and not on the intent or motive by which the members of the board are actuated. It is a universal principle, that a man shall be taken to intend that which he does. (*Stark. Ev. pt. 4, p* 739.) It was even held in *The People* v. *Brooks,* (1 *Denio,* 457,) that a justice of the peace was indictable for a misdemeanor as for a wilful neglect of duty, in refusing to take an affidavit in

Morris *v.* The People.

an action pending before him, although he believed he was not bound to take it, and acted in good faith in his refusal. The judge who delivered the opinion of the court says : " The justice knew what was asked of him, and he knew what he refused. There was nothing like surprise, inadvertence or misapprehension on his part. He refused to administer the oath and he intended so to refuse. This is a wilful violation of duty." And he adds, " Ignorance of the law is no excuse ; and an honest conviction, that one has a right to do what the law declares to be illegal, will not make the act innocent." The same principle was decided in *Smith* v. *Brown,* (1 *Wend.* 231.) There the defendant was sued for a penalty given for altering or counterfeiting a brand upon a barrel of flour, unfit for exportation. The fact being proved, it was insisted as a defence that it was ignorantly done, and with no intention to violate the law. But the court say, " Ignorance is no excuse for a violation of a statute." The rule on the subject appears to be, that in acts *mala in se,* the intent governs, but in those *mala prohibita,* the only inquiry is, has the law been violated? (*See Calcroft* v. *Gibbs,* 5 *D. & E.* 20 ; *Anthon's N. P. Rep.* 154, *n. a.*) The effect and operation of a statute imposing a special duty on a board of supervisors, and the duties and liabilities growing out of it, were fully discussed and considered in *Caswell* v. *Allen,* (7 *John.* 63.) That was also an action of debt, brought against the defendant as a supervisor of the county of Cayuga, for a neglect and refusal to levy and raise a sum of money directed to be raised by a special act, for the erection of a fire proof clerk's office. It appeared on the trial, that at a meeting of the board of supervisors, at which the defendant was present, a motion was made to raise the sum required for that purpose, but it was lost—the defendant voting in the negative—and the board did not meet again during that year. The judge before whom the cause was tried was of opinion that the supervisors had a discretion as to raising the money, and that before a recovery could be had it must be shown that they had abused that discretion or exercised it corruptly, and nonsuited the plaintiffs. The nonsuit was set aside by the supreme court, and in their opinion it is declared that the

act requiring the money to be raised was *mandatory*—that no discretion appeared to have been given to the supervisors. They were obliged to raise and levy the tax as directed, and the supervisors who by their votes prevented a compliance with the statute had rendered themselves liable to the penalty. There is nothing in the case under review to take it out of the rule there laid down. The act imposing the duty on the defendant, in the case under consideration, was no less mandatory than in that case, and in fact did not give so much discretion. The amount there required to be raised was not fixed and certain, although limited to a specific sum.

It was also urged that the penalty was intended for a violation of a public duty, and not to aid in enforcing a private claim for a debt due. There is no such distinction in the statute. That is general, applying to a refusal or neglect to perform *any* of the duties which are or shall be required of any supervisor by law as a member of the board. But if the construction were as supposed it would not avail the defendant. Although provision was made for satisfying the claim of Judge Lynch for his services, yet it was for a debt due from the public, which they were bound to discharge. The general object of the law was to secure the effectual administration of justice by the payment of the officers chosen to administer it; a duty certainly not less imperative and important than the erection of a county clerk's office.

It was further insisted that the refusal complained of was not an "offence" within the meaning of the revised statutes. Without now inquiring what is the ordinary and general interpretation of that term, when used in a statute, it appears to be sufficient to say that its meaning, in the section imposing the penalty, is defined, by the section itself, to be a refusal or neglect to perform any of the duties required by law of a supervisor as a member of the board of supervisors.

It is no answer to this action, as was also claimed by the plaintiff in error, that Judge Lynch had another remedy which he might have enforced. The legislature had authorized him to adopt the course he has pursued, and it was not the province

Morris v. The People.

of their agents to dictate what election he should make. Their duty arose out of a specific requirement of the law, and he had a right to insist on its performance.

If the above views are correct, the defendant was liable. There was no question of fact which the jury were precluded from passing on. They were not authorized to determine whether the defendant had on the facts admitted and proved incurred the penalty. That was a point to be decided by the circuit judge, and with which the jury had no legal right to interfere.

Having thus disposed of the questions presented by the bill of exceptions, and shown that none of the exceptions are well taken, the only point remaining to be noticed is the objection urged against the declaration on the motion made in arrest of judgment. In relation to this I deem it unnecessary to add any thing to the reasons assigned by Judge Cowen on the denial of the motion, and in which I fully concur, except to refer to the case of *Smith* v. *Brown*, (1 *Wendell*, 231,) in support of that decision. In every aspect of the case I am satisfied that the judgment of the supreme court ought to be affirmed.

On the question being put, "Shall this *judgment be reversed?*" the members of the court voted as follows:

*For reversal:* Senators BEERS, BURNHAM, DEYO, HAND, JONES, SANFORD, S. SMITH, TALCOTT and WILLIAMS—9.

*For affirmance:* The PRESIDENT, and *Senators* BACKUS, DENNISTON, EMMONS, FOLSOM, HARD, LOTT, PORTER, J. B. SMITH and WHEELER—10.

Judgment affirmed.