By the Court:

Monell, J.
The charter of the defendants limited the fare for way travel to two and a half cents a mile during the winter months, and to two cents during the remainder of the year (Laws of 1846, p. 280, § 17).
By an amendment the word “ winter” was stricken out, and in lieu thereof the words December, January, February, and March, inserted (Laws of 1850, p. 14, § 3).
It is conceded that the fare demanded and received of the plaintiff, on each of the five hundred and twenty-six times, was in excess of the fare allowed by the charter of the Company.
But it is claimed that the limitation contained in the charter was removed by the general act for the formation of railroad corporations, passed in 1850, which extended the limitation to three cents a mile.
The forty-ninth section of that act is as follows : “All existing-railroad corporations within this State shall respectively have and possess all the powers and privileges contained in this act and they shall be subject to all the duties, liabilities, and provisions, not inconsistent with the provisions of their charters,, contained in sections nine, thirteen, fourteen, fifteen, sixteen,, seventeen, eighteen, nineteen, twenty, twenty-one, twenty-three, twenty-four, twenty-five, twenty-six, twenty-seven, twenty-eight *306 (except subdivision nine), thirty, thirty-one, thirty-two, thirty-three, thirty-four, thirty-five, thirty-six, thirty-seven, thirty-eight, thirty-nine, forty, forty-one, forty-two, forty-three, forty-four, forty-five, forty-six, of this act.”
The excepted subdivision “nine” gives every corporation formed under the act power to regulate the time and manner in which passengers shall be transported, and the tolls and compensation to be paid therefor; but such compensation for any passenger and his ordinary baggage shall not exceed three cents a mile.
By another act, companies were authorized to take for any distance less than a mile the legal fare for one mile (Laws 1857, chap. 185).
Ho corporation possesses or can exercise any powers not expressly conferred by law, except such as are necessary to the exercise of the powers so conferred (1 Rev. Stat., 600, sec. 3).
The power to demand fare or compensation of a passenger on a railroad is not an implied or incidental power, but one derived from the statute, and can be exercised only under the authority of the statute, and is necessarily subjected to all such restrictions and limitations as are imposed by the statute (Head & Amory v. Providence Insurance Company, 2 Cranch, 127; Bentley v. Knowles, 4 Pet., 152; People v. Utica Insurance Company, 18 John. Rep., 358; Halstead v. The Mayor, 3 N. Y. Rep., 430; Perrine v. Chesapeake and Delaware Canal Company, 9 How., 172). In the last case the question was whether the Canal Company could demand toll from passengers passing through the canal, or from vessels on account of the passengers on board; and it was decided that, as no power was given to the corporation to demand toll from passengers, no such power could be exercised or such toll lawfully taken.
In every special charter for a railroad corporation granted in this State, as well as in all the general acts, the power to demand toll or fare from passengers is given in express terms.
Inasmuch, therefore, as no power to demand fare can be implied, and as the power given to the defendants by its charter *307 was limited, it is necessary to examine the forty-ninth section of the general act before referred to, to see whether the construction of it, by the defendants, is correct.
If the section conld be separated so as to be read in detached parts, giving to each part a separate effect, it is possible it could be understood as a grant of all the powers contained in the general act; that is, if the section could be so separated as to make the granting part and the subjecting part each complete in itself.
The first part of the section provides that “ all existing railroad corporations shall have and possess all the powers and privileges contamed m this act.” Should we stop here, there could be no doubt that not only the power contained in the ninth subdivision of the twenty-eighth section, to regulate and fix the rate of fare at not exceeding three cents, was granted to all existing railroads, but that the legislature intended it should be so; and more than that, that the legislature intended to confer upon such existing companies all the powers and privileges contained in the general act, in addition to the powers and privileges expressly given to them by their charters, even although such additional powers and privileges were wholly inconsistent with the provisions of their charters.
But such a reading of the section would necessarily be to give to the existing companies two, in some respects, wholly inconsistent powers. Thus, all the provisions of the first eight sections, and of the tenth, eleventh, twelfth, twenty-second, twenty-ninth, forty-seventh, and forty-eighth sections, would apply to all railroads existing under special charters in 1850, when the general act was passed. A comparison of the defendants’ charter with the sections of the general act above mentioned will exhibit palpable differences—in the number of officers, manner of electing directors, of filling vacancies, acquiring land, and in other respects—which, if applied to existing companies, would be violations of their charters. It must, therefore, be presumed that the legislature could not have intended to give these incongruous and inconsistent powers to the defendants.
*308 But to follow the section, “ and they shall be subject to all the duties, liabilities, and provisions not inconsistent with the provisions of their charters, contained in sections—” etc. The several sections enumerated respectively confer powers, or impose duties or liabilities, either or both of which the legislature may do. But it would be a novelty in legislation to “ subject ” to a power, as it would be to “ grant ” a duty or liability.
It is not probable, therefore, that in enumerating the several sections which should be applicable to existing companies, it was intended to “ subject ” such companies to any powers or privileges contained in or granted by them, but to subject them only to the duties and liabilities specified; first giving them all the powers and privileges, and then subjecting them to all the duties and liabilities.
If it had been intended to grant more power to existing com-' parties, than it was to subject them to new duties and liabilities, the latter or subjecting part of the section would not have included sections nine, thirteen to twenty-one inclusive, twenty-four, twenty-five, twenty-six, twenty-eight, and thirty-five, all of which contain grants of important powers and privileges, but do not impose any duty or liability whatever, especially section twenty-eight, which is the general enabling section, and includes the power to regulate the fare of passengers.
It is quite evident, therefore, that the legislature intended merely to grant the powers and impose the duties contained' in the specified sections, so that the whole section should read together, as if it read, “ Existing railroad companies shall have and possess all the powers and privileges, and shall be subject to all the duties, etc., contained in sections nine",” etc.
Such a construction of the section will give an intelligible and altogether consistent effect to the exception of subdivision nine of the twenty-eighth section of the general act, by preventing its application to companies existing at that time under special charters, and excluding them from the privileges therein contained.
It may be further said, in aid of this construction, that the legislature probably had in view that prior to the passage of the *309 general act a large number of railroad corporations had received special charters, in many of which the rate of fare was limited, but in some cases exceeding the limit put in the general act. Even the defendants, who by their charter are limited to two and two and a half cents a mile for way travel, are allowed to demand ten cents for any distance under five miles (Laws of 1848, p. 44, sec. 8), á privilege of which their construction of the law would necessarily deprive them.
It is, therefore, proper to assume that the legislature did not intend to disturb or interfere with any of the powers or rights which had before been specially conferred on existing corporations, or to grant any new powers or privileges inconsistent with their charters.
Although, perhaps, no reason can be assigned for the change in the forty-ninth section from the language and purport of the somewhat corresponding forty-sixth section of the act of 1848, which latter section granted the powers and subjected to the duties, only so far as they were applicable and were not inconsistent with their charters, had the forty-ninth section been a transcript of the forty-sixth section, all difficulty in its interpretation would have been removed; but I do not think a reason for a different • construction is to be found in the fact that the legislature which enacted the law of 1850 did not employ as clear language, or frame as connected and lucid sentences to express their intention, as a previous legislature had. Ho doubt the forty-ninth section is illy adapted to fairly express the intention of the lawmakers. It is faulty in construction, and capable of a literal interpretation quite at variance with its probable design. But construing it by the rules applicable to all written law, and getting at its meaning from what must be supposed to have been the intention of its framers, it is quite clear, I think, that it was not intended that any limitation as to fare contained in the charters of existing railroad companies should be removed, and that to effect this the ninth subdivision was excepted.
My conclusion on this branch of the case is, that the fare demanded of the plaintiff was unlawful.
*310 It is insisted, however, that no more than the excess of fare paid by the plaintiff and one snm of fifty dollars can be recovered in this action.
The section of the statute under which the action is brought is, that “ any railroad company which shall ask and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars, which sum may be recovered, together with the excess so received, by the party paying the same” (Laws 1857, chap. 185).
There cannot be a doubt that the sum which a railroad corporation shall “ forfeit,” for overcharging a passenger, is a penalty, or at least in the nature of a penalty, and is governed by all the rules applicable to penalties. It is not necessary that a statute, in the language imposing it, should denominate it a penalty. When a statute subjects a person, artificial or otherwise, to a liability to pay money, either for omitting to perform a duty enjoined or for doing an act prohibited, where no liability would arise at common law, he is subjected to a forfeiture of the sum, and it is a penalty for disobeying the statute (Corning v. McCullough, 1 N. Y. Rep., 47; Bird v. Hayden, 1 Robt., 383; Merchants’ Bank v. Bliss, id., 291). In these cases it was held that a personal liability for the debts of a corporation, imposed upon its trustees, was a penalty; yet neither of the words, penalty or forfeiture, are used in the statute. So these words, it has been said, meaning the same, might be used interchangeably (Commissioners of Excise v. Doherty, 16 How. Pr. R., 46).
Similar words are used in many penal statutes. Thus, a tenant for unlawfully removing his goods “ shall forfeit to the landlord ” (2 R. S., 503, sec. 17); and a supervisor, for certain neglect of duty, shall “ forfeit,” etc. (1 R. S., 368, sec. 16). In each of these cases they were held to be penalties (Morris v. The People, 3 Denio, 381; Palmer v. Conly, 4 id., 374 ; 2 N. Y. R., 182). In the last ease it is said that a statute giving the penalty to the aggrieved party is in the nature of a satisfaction for the wrong done.
It is entirely clear, therefore, that this is a penalty imposed by *311 a statute upon railroad corporations for doing a prohibited act, and for doing which no common-law liability would attach.
The next inquiry then is, can more than one penalty of fifty dollars be recovered in the action % Unless there is something in the statute which expressly or by necessary inference limits a recovery, and therefore removes the case from the effect of numerous decisions, the question must be deemed settled by authority.
There is no doubt that, as a general rule, as many causes of action of the same nature as a party may have can be united in the same action. This was the rule before the Code as well as since (Graham’s Pr., 2d ed., 95); and where a separate action is brought for each cause of action, the court will require all to be consolidated into one.
If, therefore, the plaintiff in this case had several causes of action of the same nature, it was proper to unite them.
Although the statute of 1857 does not say there shall be a forfeiture of fifty dollars for each offence, or for each time a company shall demand unlawful fare, yet such result necessarily follows. Any other construction would defeat, or certainly very nearly defeat, the purpose of the statute, which is to “prevent extortion by railroad companies.” For if a single penalty only is incurred, corporations could practise extortion with little fear of consequences.
I cannot entertain a doubt that the legislature intended the statute should be a continuous one, and meant to provide a remedy for each and for every time unlawful fare was demanded ; and the defendants’ counsel was understood to admit that the plaintiff on each occasion, when the penalty was incurred, could have maintained an action for its recovery. But he claims that the penalties cannot be aggregated, as was done in this case, and that the plaintiff in one action can recover only a single sum of fifty dollars.
The Excise Law of 1813 declared that the offender “for each offence ” should forfeit twenty-five dollars; and the eighteenth section of the act provided that, if a recovery was had, such *312 recovery should be a har to all prosecutions for like offences committed before such recovery. Under that statute the court held, in Washburn v. McInroy, (7 Johns. R., 134), that the legislature intended that there should be a recovery for a single penalty only. But in the Bevised Statutes the eighteenth section of the act of 1813 was omitted, and the court came to a different corn elusion in Deyo v. Reed (3 Hill, 527).
The Bevised Statutes provide (1 R. S., 680, § 15) that whoever shall sell, etc., without having a license therefor, “ shall forfeit twenty-five dollars? Under that statute the decision was made in Deyo v. Beed. It was an action by overseers of the poor, and it appeared that the defendant had been guilty of three several violations of the statute. On the trial the court charged the jury that the plaintiff was entitled to recover “ for as many penalties as the proof showed the defendant to have incurred.” The charge was sustained. The cases of Washburn v. McInroy, supra, and Tiffany v. Driggs (13 Johns. Rep., 252), were explained as resting wholly upon the eighteenth section of the act of 1813, which not having been incorporated with the Bevised Statutes left the question to be settled upon ordinary principles (see also Blatchly v. Moses, 15 Wend., 215). These decisions are supported by Young v. The King (3 T. R., 98), and Holland v. Bothmar (4 id., 228).
In my judgment, the case under consideration is not distinguishable from the cases cited which arose under th'e excise law. That law and the one under which this action was brought are in phraseology almost identical. Beither have the words for eaeh offence, and each declares that the offender shall “forfeit,” etc.
But the defendants claim that the amount which may be recovered is controlled by the words “ which sum mazy he recovered,” following the amount of the penalty fixed at fifty dollars. It is, perhaps, sufficient to say, that all statutes which impose penalties provide the manner of prosecuting for them.
The Excise Act in the Revised Statutes (sec. 19) provides that the penalties imposed by the act shall be sued for and recovered by the overseers of the poor.
*313 There is nothing nnusual in the statute, nor is there anything in the construction contended for, which prevents a separate action for each offence. The question, therefore, must be determined upon the ordinary rules governing and regulating the joinder of several causes of action. And I can see no reason why, if the defendants have incurred the penalty on several and different occasions, they may not all be recovered in one action.
The case of The People v. N. Y. Central R. R. Co. (13 N. Y. Rep., 78) was an action to recover numerous penalties, of twenty dollars each, incurred under section 39 of General Eailroad Act, which provides that a bell shall be rung on locomotives when crossing highways, under a penalty of twenty dollars for every neglect. It was objected in that case that the act provided for only a single ringing of the bell, and that if once rung there was no penalty for any other omission. But the court held that, by the fair construction of the act, the penalty was incurred every time the ringing was omitted, and a judgment for twenty-seven penalties in one action was affirmed.
I am unable to discover any difference between an act which affixes a specific penalty for each offence ox for each túrne a prohibited thing is done, and an act, like the one under examination, which omits those words. The latter, equally with the former, attaches to each violation, and affixes the penalty to each offence. Besides, no such distinction is taken in The People v. The N. Y. Central R. R. Co. (supra).
In City of Brooklyn v. Cleves, Hill & Denio (Lalor’s Sup., 231), the action was to recover several penalties for violation of a city ordinance. Kelson, C.J., says: “ It is well settled that several penalties may be included in and recovered on one suit at common law, and there is no statute restriction.” And in Long-worthy v. Knapp (4 Abb., 115), a complaint under an act imposing a penalty of three dollars for every day's neglect, setting forth violations of the statutes on one thousand and ninety-five days, and claiming to recover all the penalties in one action, was sustained.
The cases to which I have referred are sufficient to determine *314 this case. They determine, heyond doubt; that the several causes of action arising or accruing to the plaintiff under the statute may be united in a single action.
After a careful examination and consideration of the two questions in the case, 1 am unable to discover any error in the judgment of the referee.
The action and the result of it are important, and its consequences to the defendants much greater than the trifling excess of fare received from the plaintiff; but they are conseqtiences which result from one statute, for an erroneous construction of another statute.
The judgment should be affirmed.
McCunn, J., dissented.