NEW-YORK,
Nov. 1810.

CASWELL
v.
ALLEN.

---

CASWELL, *qui tam, &c. against* ALLEN.

THIS was an action of debt, brought against the defendant, as supervisor of the county of *Cayuga*, for neglecting and refusing to levy and raise, by tax, on the freeholders and inhabitants of the county, a sum not exceeding 800 dollars, for the purpose of building a fire proof clerk's office, near the court-house, &c. pursuant to the directions of the act of the legislature, passed the 3d of *April*, 1807. (Sess. 30. c. 122.) The declaration contained three counts. The first count stated, that by an act of the legislature, passed the 20th of *March*, 1807, (sess. 30. c. 43.) entitled " an act more effectually to compel the supervisors of the towns, in the different counties in the state to raise such sums of money as they are directed to raise and levy, by acts of the legislature," it was enacted, " that in all cases, where the supervisors in any county shall be directed by law to raise moneys, for the erection of public buildings, or other purposes, and shall neglect or refuse to raise the sum, &c. every supervisor neglecting or refusing, &c. shall forfeit and pay the sum of 250 dollars, one moiety thereof to the use of the treasurer of the state, and the other moiety to the person who shall prosecute, &c. That by another act of the legislature, passed the 3d of *April*, 1807, (sess. 30. c. 122.) the supervisors of the county of *Cayuga*

The act of the 3d of *April*, 1807, (sess. 30. c. 122.) directing the supervisors of the county of *Cayuga*, to raise a certain sum by tax, for the purpose of building a fire proof clerk's office, &c. is mandatory, and they are bound to execute it, without delay; and the supervisors, who at their annual meeting, in *No-vember*, 1808, refused to raise money for that purpose, were held liable to an action for the penalty given by the act of the 20th of *March*, 1807, (sess. 30. c. 43.) for neglecting and refusing to levy and raise the money by tax.

NEW-YORK, were authorized and required to levy and raise a tax on
Nov. 1810. the freeholders and inhabitants of the county, a sum not
CASWELL exceeding 800 dollars, &c.   That the defendant, on the
v.
ALLEN. first *Tuesday* of *April,* 1808, was duly elected supervisor
of the county of *Cayuga,* for the town of *Scipio,* to con-
tinue in office one year, or until another should be elected
in his stead ; and in eight days after took and subscribed
the oath required by law, in such case ; and that the
defendant continued as supervisor, performing the duties
of such office, until the bringing of this action ; that the
supervisors according to the act in such case made and
provided, met, in *November,* 1808, and proceeded to
examine, settle, and allow the accounts, chargeable
against the county, and to ascertain what sum was neces-
sary to be raised for the payment thereof ; and the su-
pervisors were then and there requested to levy and
raise by tax, &c. a sum not exceeding 800 dollars, to be
applied to building a fire proof clerk's office, &c. and
that the defendant, and the other supervisors, not re-
garding, &c. neglected and refused to levy and raise, &c.
by which, &c.

The cause was tried at the *Cayuga* circuit, in *June,*
1809, before Mr. Justice *Van Ness.*

At the trial, it was proved, that the defendant met
with the board of supervisors, in *November,* 1808, as su-
pervisor of the town of *Scipio,* and the board were moved
to raise the money to build the clerk's office ; but the
motion was lost, the defendant voting against it.   The
board of supervisors adjourned, not to meet again during
that year.   The act of the 3d of *April,* 1807, was not
produced to the board ; but the supervisors were in-
formed of it.   The majority, who voted against raising
the money, said, that they did not know that the act
empowered them to raise the money ; and did not ob-
ject on the ground that it had not been raised by the
supervisors of 1807.   It appeared, that in 1807, and

1808, about 6,000 dollars was raised in the county; about 5,000 dollars of which was for the purpose of erecting the court-house and gaol; no more money was raised in those years than to defray the contingent expenses of the county, and to erect the court-house and gaol. The aggregate amount of property in the county, was estimated at about one million of dollars.

The judge was of opinion, that the supervisors had a discretion as to raising the money; and that the plaintiff, before he could be entitled to recover, must show that they had abused that discretion, or exercised it corruptly; and no further evidence being offered, the plaintiff was nonsuited.

A motion was made to set aside the nonsuit.

*Hildreth* and *Troup*, for the plaintiff, contended, that the act of the 3d of *April*, 1807, was mandatory on the supervisors, who had no discretion, but were bound to obey the requisition of the legislature. The legislature having decided that it was proper to raise the money, for the purpose designated, nothing remained for the supervisors but to execute the intention of the act. It cannot be supposed that the legislature would pass such an act, and leave it to the pleasure of the supervisors, whether it should ever be carried into effect or not. No time was fixed within which the money was to be raised. It was, therefore, to be raised immediately, or with all convenient speed. The only discretion which the supervisors could exercise, was-as to the amount to be raised; whether the whole 800 dollars, or only a part of it, and as to the apportionment of the tax among the individuals.

*E. Williams*, contra. This is an action for a penalty, for a breach of public duty; and the party is held to strict proof, in order to support his action. The act was passed in 1807, and was mandatory, if at all, on the supervisors then in office. The defendant was not then

a supervisor. But what is the breach of duty? The supervisors, in 1807, and 1808, raised above 6,000 dollars. The penalty in the act is for the not raising the money; it is for that the action is brought; not for not applying the money, when raised, to the erection of a fire proof clerk's office. It is not averred in the declaration that the money raised was not so applied.

Again, it is said, the money was to be raised immediately. But the office was to be erected near the court-house. Now the court-house was not erected, nor its site fixed; and by the act of the 6th of *April*, 1808, (sess. 31. c. 149.) the building erected was not to be recognised as a court-house, until the commissioners should purchase, and cause to be conveyed to the supervisors, at least one acre of land, on which the building was to be erected. There was not, then, a court-house, when these supervisors held their meeting, near which a clerk's office could be erected.

Again, this was a private act; and there is no evidence that it was ever shown or produced to the supervisors, who were not bound to take notice of it, at their peril.

There was certainly a discretion in the supervisors, to raise the whole or a part of the sum of 800 dollars; and they must also have a discretion, as to the time in which it was to be raised, provided it be done in a reasonable time.

YATES, J. delivered the opinion of the court. The only question in this cause is, whether the supervisors of the county of *Cayuga* had a discretion as to the raising of this money; or whether the act is mandatory, and obliged them to do it, without delay?

By the act of the 20th of *March*, 1807, entitled an act more effectually to compel the supervisors of the towns, in the different counties of this state, to raise such sums of money as they are directed to raise and levy, by acts of the legislature, it is enacted, that in all cases, when

the supervisors of any county in this state, have, or shall be directed by law, to raise moneys, for the erection of public buildings, or other purposes, and shall neglect or refuse to raise the sum so required to be raised, in the manner so directed by any act or acts of the legislature, every supervisor so neglecting or refusing to conform to the directions of any law passed, or to be passed, for the purposes aforesaid, shall forfeit and pay the sum of 250 dollars; the one moiety whereof, when recovered, shall be put into the hands of the treasurer of this state, and the other moiety shall go to the benefit of the person who shall prosecute the same to effect.

This law was passed to prevent a growing evil. Many instances had occurred, of supervisors not only neglecting, but absolutely refusing to comply with acts of the legislature, by which they were directed to raise money for public purposes, and by such neglect, impeded the progress of measures evidently beneficial to the community. Although required for public convenience, yet, owing to local prejudices, and disputes, these measures could not be forwarded. The statute, therefore, to prevent this evil, subjected the persons, by whose means the benefits intended by those laws were prevented, to the penalty stated in the act.

The law of the 3d of *April*, is sufficiently explicit to convey the meaning of the legislature. It is there enacted, "that it shall be the duty of the supervisors of the county of *Cayuga*, to levy and raise, by tax, on the freeholders and inhabitants of the said county, a sum not exceeding 800 dollars; and to apply the same money, so to be raised, in building a fire proof clerk's office, at or near the court-house, when the same is erected, under the the direction of the said supervisors, by their superintendants, to be by the said supervisors appointed for that purpose," &c.

This act is mandatory. No discretion appears to be given to the supervisors; they were obliged, forthwith, to raise and levy the tax, as directed; and the supervisors, who, by their votes, prevented a compliance with the statute, have rendered themselves liable for the penalty mentioned in the law of the 20th of *March,* 1807.

It was suggested, in argument, that it was the duty of the board of supervisors, of the year 1807, exclusively; and that they, only, were liable to the penalties of the statute. Such reasoning cannot be correct. Their neglect could not destroy the further operation of the statute, as to all future boards. It became their duty also; and such of the supervisors as neglected or refused to comply with the directions of the statute, are equally liable to its penalty. The duty and responsibility is the same in both cases.

According to the strict construction of this law, which must be the rule here, it being a penal statute, I cannot discover that a discretion, authorizing a delay, can possibly have been intended by the legislature. It is alleged, that the court-house not being established, made it unnecessary, and, consequently, improper. And in order to show that the site for the court-house had not been located, the 4th section of the act of the 6th of *April,* 1808, authorizing commissioners to fix the place, has been cited.

But admitting that, to give operation to the statute of the 3d of *April,* the establishing of the court-house was first necessary, and that it was incumbent on the plaintiff to show that an acre of land around the building had been conveyed to the supervisors of the county, this did not come in question on the trial.

The judge laid down a rule of law, which the plaintiff's counsel were bound to respect; and the refusal to give further evidence admits, that they solely relied on the defendant's refusing to vote for raising the money;

and this declining to give further evidence cannot be considered as an admission, that evidence as to the conveyance did not exist.

An attempt was made to show that the money raised in 1807, and 1808, was virtually a compliance with the directions of the act; but when it appears, by the evidence, that the sums raised in both those years were not more than sufficient to defray the contingent charges of the county, and the amount requisite for the court-house, it cannot operate as an excuse; more especially, as it cannot be denied that the question, as to raising the money, for the special purpose of erecting a fire-proof office, had been put to the board of the supervisors, and was negatived by a majority, in which vote the defendant concurred. The suggestion, that the board of supervisors had received no official notice of the law, cannot exculpate them. It is not reasonable to suppose that they were ignorant of the existence of this law, upwards of 18 months after it had passed; nor could such a fact, allowing it to have existed, remove their liability. They were, however, informed of the law, by the member who introduced the subject, and made the motion to raise the sum directed by the statute, in the board of supervisors; on which motion the part taken by the defendant, as before stated, rendered him liable, as one of the supervisors, for preventing the measure.

The nonsuit, therefore, ought to be set aside, and a new trial granted.

Rule granted.